CITY OF EUCLID, APPELLEE, *v.* HEATON, APPELLANT.
THE STATE OF OHIO, APPELLANT, *v.* DODGE, APPELLEE.
(Two cases.)
THE STATE OF OHIO, APPELLANT, *v.* BENJAMIN, APPELLEE.

[Cite as Euclid v. Heaton, 15 Ohio St. 2d 65.]

66

(Nos. 41178, 41193, 41194 and 41228—Decided June 19, 1968.)

*Mr. William T. Monroe*, director of law, and *Mr. Robert Steele*, for appellee in case No. 41178.

*Messrs. Metzenbaum, Gaines, Krupansky, Finley & Stern* and *Mr. Donald M. Robiner*, for appellant in case No. 41178.

*Mr. Richard J. Rinebolt*, prosecuting attorney, for appellant in case Nos. 41193 and 41194.

*Mr. Paul H. Cunningham* and *Mr. Donald L. Robertson*, for appellee in case Nos. 41193 and 41194.

*Mr. Robert L. Balyeat*, prosecuting attorney, for appellant in case No. 41228.

(No appearance for appellee in case No. 41228.)

SCHNEIDER, J.  In each of the two *Dodge cases*, it will be observed immediately that the Prosecuting Attorney initially raised no objection to the form or substance of the plea.  Neither in the Court of Appeals nor in this court did he advance any argument directed to the merits of his dissatisfaction with the disposition of cause No. 41193 (indictment for murder in the first degree of defendant's mother-in-law) by the three-judge court, confining his argument solely to the constitutionality of the so-called prosecutor's appeal.

In cause No. 41194, he appealed only from the order of the trial court refusing to grant his motion "not to allow" the plea (of guilty to murder in the *second* degree to the indictment charging murder in the *first* degree) to which he had previously consented.  No error was claimed, or "appeal" taken, from the disposition of the cause upon the plea by the single-judge court.  It is self-evident that the Court of Appeals should have dismissed the proceedings forthwith, since the error, if any, had been consented to by the prosecutor.  Instead of adhering to the rule binding it to refrain from deciding a constitutional question unless the necessity therefor arises (*Greenhills Home Owners Corp.* v. *Greenhills*, 5 Ohio St. 2d 207; 10 Ohio Jurisprudence 2d 195-201, inclusive) that court issued its opinion on the constitutional question, the substance of which has already been reported in the statement of facts, *supra*.  In so doing, it indulged in the precise conduct which it held the General Assembly was powerless to impose upon it, that is, the decision of what, in fact, was a question academic to the actual case before it.

By our unanimous affirmance of the judgments in *Dodge*, however, we accomplish the same result as that reached by those judgments, but for the reasons already explained.

Two and one-half months later the same Court of Appeals, sitting in Allen County, decided *Benjamin* (No. 41228).  The question there arose from the order of the trial court sustaining a "motion" which was equivalent to a demurrer to the indictment.  That motion raised the issue

of the sufficiency of the indictment. The defendant was not then, had never been, nor has yet to be in jeopardy on that indictment. Nevertheless, the Court of Appeals dismissed the appeal on constitutional grounds on the authority of *Dodge,* notwithstanding its syllabus in that case was limited to appeals in which jeopardy had attached, and notwithstanding the language of Section 2945.70, Revised Code, which excepts a "judgment of the trial court on its ruling on a motion to quash, a plea in abatement, a demurrer, or a motion in arrest of judgment," from the mandate that (in proceedings pursuant to Sections 2945.67 to 2945.70, inclusive, Revised Code) a decision of the Court of Appeals shall not affect the judgment of the trial court in the cause and shall merely "determine the law to govern in a similar case."

Obviously, the same reasoning set forth in the opinion of the Court of Appeals in *Dodge* supports our unanimous reversal of that court's judgment in *Benjamin,* and that cause is remanded to the Court of Appeals for consideration on its merits. Regardless of the resolution of the meritorious question, the decision of the Court of Appeals may, and will, *affect* the judgment of the trial court. If the reviewing court finds no error in the proceedings of the trial court, *i. e.,* that the indictment was insufficient, the judgment will be affirmed. Otherwise, if the indictment is sufficient the judgment of the trial court may, and should, be reversed and thence defendant may be brought to trial on the indictment. Hence, the Court of Appeals will have before it an actual, not a moot, question.

In the proceedings in the Court of Appeals on remand, counsel for the defendant, either of his own choosing or appointed for him by the trial court if he is indigent, should be notified and permitted to participate as a party-appellee, which, in fact, he is. If the trial judge fails to appoint counsel upon a showing of indigency of the defendant, he should be commanded to do so. If appointed due to the indigency of the defendant, counsel should be compensated for his services under Section 2941.51(B), Revised Code, by the appointing trial court.

We now pass to a disposition of *Heaton* (No. 41178), where the constitutionality of Sections 2945.67 to 2945.70, inclusive, Revised Code, is squarely presented. When that case was argued, and thereafter discussed by the court in conference, five members of the court, adopting the rationale of the Court of Appeals in its opinion in *Dodge* (10 Ohio App. 2d 92), concurred in the proposition that the statutes referred to are constitutionally inoperative to permit an "appeal" in a criminal case on behalf of the prosecutor from any judgment of a trial court not included within the exceptions enumerated in Section 2945.70, Revised Code. Judge Zimmerman dissented. The writer, whose views are set forth later herein, was, and remains, of the opinion that the controlling infirmity in the statutes is the failure to insure an adequate adversary proceeding on appeal, but that *Heaton* should be affirmed for the reason that the record therein clearly reveals that any such infirmity was, in fact, cured by the participation of the defendant throughout the case by counsel of her own selection. That participation was motivated by her very real interest in preserving the grounds for her acquittal as the law to govern her future conduct.

Therefore, in view of the constitutional provision in this state (Section 2, Article IV) then in effect, requiring "the concurrence of at least all but one of the judges" to reverse *Heaton*, the writer became, in effect, one of the "majority" of two and was assigned to prepare the opinion of the court resolving all four of the cases here reported.

At this time, however, we may judicially note that May 7, 1968, has passed; that at a special election held thereon, a majority of the electors voted in favor of an amendment to the Constitution proposed by the General Assembly under the authority of Section 1, Article XVI, thereof, one effect of which is to amend Section 2, Article IV, so as to delete the language requiring a six-judge concurrence to reverse the judgment in *Heaton*; and that the Secretary of State has canvassed the vote and confirmed the passage of said amendment.

Section 1, Article XVI, provides in this circumstance as follows: "If the majority of the electors voting on the same shall adopt such amendments the same shall become a part of the Constitution."

I am constrained to concede, therefore, that the amendment became a part of the organic law of this state as of May 7, 1968, and a majority of this court now has authority to reverse the judgment in *Heaton* on the basis of the reasoning which they have adopted and concurred in.

We also notice, of course, that in the resolution of the General Assembly proposing the amendment to the people, the following language appears:

"If adopted by a majority of the electors voting on this amendment, the amendment except paragraph (B) of the Schedule shall take effect January 10, 1970, and existing sections 1 and 2, and sections 3, 4, 6, 7, 8, 10, 12 and 14 of Article IV of the Constitution of Ohio shall be repealed from such effective date. Paragraph (B) of the Schedule and the repeal of sections 12 and 13 of Article XI adopted in 1851 shall become effective immediately upon the adoption of this amendment by the electors of this state."

We note further that neither that language nor its substance was ordered to be placed upon the ballot and the language of the condensed text of the proposed amendment which, in fact, appeared thereon follows:

"Shall the Constitution of the state of Ohio be amended by amending Sections 1 and 2, enacting Sections 3, 4, 5 and 6 and repealing existing Sections 3, 4, 6, 7, 8, 10, 12 and 14 of Article IV and by repealing Sections 12 and 13 of Article II as adopted in 1851 to provide *that the Supreme Court shall decide all cases by majority vote,* to fix the power of the Supreme Court of Ohio to exercise administrative supervision over all courts and to make rules of practice and procedure, to prohibit the election or appointment to any judicial office of a person who shall have passed the age of 70 years, to equalize judges' salaries and to allow increases in compensation during term, to remove the Probate Court as a constitutional court and to authorize

the consolidation of county Probate Courts and Courts of Common Pleas?'' (Emphasis supplied.)

The first paragraph of the syllabus in the case of *State, ex rel. McNamara, v. Campbell*, 94 Ohio St. 403, reads:

''A provision in a joint resolution of the General Assembly of Ohio, submitting to the electors of the state a proposed amendment to the Constitution, that the same shall not go into effect until a time later than that fixed by Section 1 of Article XVI of the Constitution, is inoperative and void, unless the proposition to postpone the taking effect of such proposed amendment beyond the time named in the Constitution is also submitted to the electors of the state and adopted by a majority of those voting on the proposition.''[2]

---

[2] The court pointed out (94 Ohio St. 403, 411) that in that case "all that was submitted to the people was: 'Article XV, Section 4. Eligibility of women to appointment as members of boards of, or positions in, department and institutions affecting, or caring for, women and children.'" This was the language which the General Assembly suggested to be, and was, in fact, placed on the ballot. Obviously, that ballot language did not contain the purported effective date of January 1, 1914. See House Joint Resolution No. 41 (103 Ohio Laws 992), which reads as follows:

"Be it resolved by the General Assembly of the State of Ohio: Three-fifths of the members elected to each house concurring therein: That for the purpose of procuring the eligibility of women to certain offices, a proposal shall be submitted to the electors of this state in the manner provided by law, on the first Tuesday after the first Monday in November, 1913, to amend the Constitution of the state by amending Article XV, Section 4, thereof so that it will read as follows:

"Sec. 4. No person shall be elected or appointed to any office in this state unless possessed of the qualifications of an elector; provided that women who are citizens may be appointed as members of boards of, or to positions in, those departments and institutions established by the state or any political subdivision thereof involving the interests or care of women or children or both.

"Section 2. At such election this amendment shall be placed on the official ballot in the manner prescribed by law as 'ARTICLE XV, SECTION 4,—ELIGIBILITY OF WOMEN TO APPOINTMENT AS MEMBERS OF BOARDS OF, OR POSITIONS IN, DEPARTMENT AND INSTITUTIONS AFFECTING, OR CARING FOR, WOMEN AND CHILDREN.', or in other language sufficient to clearly designate it, *and if a majority of the electors voting on the same shall adopt such*

The foregoing is settled law in this state and the conclusion is inescapable that the constitutional amendment adopted by the voters on May 7, 1968, became a part of our Constitution, effective as of that date.

See *State, ex rel. Rodocker,* v. *Schroy* (Ohio App.), 12 Ohio Opinions 173, 31 N. E. 2d 256, appeal dismissed, 134 Ohio St. 96. See, also, *State, ex rel. Duffy,* v. *Sweeney,* 152 Ohio St. 308, 312.

We note further that the following appears in a "Schedule" contained in the resolution of the General Assembly:

"Upon the effective date of this amendment:

"(A) Provision shall be made by law for the disposition of all pending cases in accordance with the procedural law in effect at the time of the effective date of this amendment.

"(B) In accordance with the provisions of this Article, the General Assembly shall enact such laws and the Supreme Court shall promulgate such rules as will give effect to the provisions herein.

"(C) All laws and rules of court in existence upon the effective date of this amendment shall continue in effect until superseded or changed in the manner authorized by this amendment."

However, the former constitutional rule requiring the concurrence of six judges of the Supreme Court in a case of this kind, was not procedural but organic, substantive law, and it is manifest that the language quoted imme-

---

*amendment, Section 4 hereinabove set forth shall on and after the first day of January, 1914,* become and constitute the section so amended of Article XV of the Constitution of the state of Ohio and said original Section 4 shall be repealed and annulled." (Emphasis supplied.)

Curiously, the court made no reference to the fact that the resolution, as quoted above, constituted, along with the certificate of the Secretary of State, the entire publication of the proposed amendment as required then and now by Section 1, Article XVI.

The records of the office of the Secretary of State are silent on this question, but a search of the newspaper archives of the Public Library of Cincinnati and Hamilton County confirms that such publication was, in fact, made in such form.

diately above has reference to the language of new Section 5, Article IV of the Constitution, granting to the Supreme Court a "general superintendence over all courts in the state" through "rules promulgated by" it and the power to "prescribe rules governing practice and procedure in all courts of the state which rules shall not abridge, enlarge, or modify any substantive right," the latter power to be exercised in conjunction with the General Assembly which has the opportunity to veto any such proposed rules before they may become effective.

Therefore, the decision of the Court of Appeals in *Heaton* (No. 41178) is reversed and held for naught, ZIMMERMAN and SCHNEIDER, JJ., dissenting therefrom; ZIMMERMAN, J., on the ground that Section 2945.67 *et seq.*, Revised Code, are constitutional, and SCHNEIDER, J., on the ground that in *Heaton* those sections were not constitutionally inoperative.

What follows constitutes solely the views of the writer.

I am not as disturbed by the incapacity of the Court of Appeals to pronounce an opinion of the law (which pronouncement may be ineffectual to alter the status of the defendant in a case where the problem arises solely in deference to, and as a result of, the attempt by the General Assembly to accommodate, the constitutional prohibition against double jeopardy) as I am by the curious provision in Section 2945.69, Revised Code, which lodges discretion in the trial judge, whose decision is sought to be reviewed, to appoint or not to appoint an attorney to serve as the adversary to the prosecution.

Furthermore, the archaic provision of the same statute limiting compensation of any appointed attorney to one hundred dollars is so out of touch with reality when viewed in the light of Section 2941.51, Revised Code (as amended in 131 Ohio Laws 680, allowing compensation not exceeding three hundred dollars and expenses [except in murder and manslaughter cases where no limit is imposed by statute] as the trial court may approve, plus compensation and expenses to be fixed by the Court of Appeals or the Supreme

Court in a case where counsel has been assigned to maintain and conduct the *defendant's* appeal), as to impede inherently any proceeding (where the defendant is unable to obtain counsel) under Sections 2945.67 to 2945.70, inclusive, Revised Code, from attaining an adversary character, the absence of which in a criminal appeal by the state is the real cause of its infirmity as a nonjudicial exertion.

Mr. Chief Justice Fuller, in explaining that the problem is not a want of jurisdiction, but one of the "objectionable consequences that would result from such an exercise of jurisdiction," quoted with approval in *United States* v. *Evans*, 213 U. S. 297, 53 L. Ed. 803, 29 S. Ct. 507, the explanation of those consequences by the lower court: " 'The appellee in such case, having been freed from further prosecution by the verdict in his favor, has no interest in the question that may be determined in the proceedings on appeal and may not even appear. Nor can his appearance be enforced. Without opposing argument, which is so important to the attainment of a correct conclusion, the court is called upon to lay down rules that may be of vital interest to persons who may hereafter be brought to trial. All such persons are entitled to be heard on all questions affecting their rights, and it is a harsh rule that would bind them by decisions made in what are practically "moot" cases *where opposing views have not been presented.*' " (Emphasis supplied.)

However, in *Heaton*, opposing views were presented in each court and at every stage of the proceeding and the defendant expressed a real interest in maintaining the basis for her acquittal as a guide to her future conduct.

While I am engaged about the business of rendering advice to the General Assembly, there is one final thought. Although conceding and defending the right of any one not to be placed twice in jeopardy, and rejecting the continuous jeopardy theory indulged by Wisconsin (see *State* v. *Kennedy*, 15 Wis. 2d 600, 113 N. W. 2d 372), I find no federal or Ohio constitutional right granted to any one to a continuing and subsisting judgment of acquittal or dismissal

from a criminal charge procured by, or resulting from, error, as distinguished from the right to a prompt disposal of a criminal charge, either by trial or dismissal. Therefore, what useful purpose is served by a statute (Section 2945.70, Revised Code) which limits the consequences of a review of a criminal case, in view not only of the statutory provisions for a plea of "once in jeopardy" (Sections 2943.03, 2943.05, 2943.06 and 2943.09, Revised Code), but of the constitutional provision against double jeopardy, which does not depend upon any statute for its vitality?

I am not to be read as saying what the General Assembly ought to do, for the choice belongs to it. But, if it desires to adopt an effective appellate procedure for the prosecution in criminal cases, it might choose to repeal outright Section 2945.70, Revised Code. Then, if a judgment of acquittal on review is held to be erroneous, that judgment would be reversed and thus *affected* by the judgment of the reviewing court. The Court of Appeals for Hancock County (and the majority of this court) could no longer, it would seem, conclude that in so affecting the judgment of the trial court, the decision of the reviewing court would be resolving an hypothetical question.

The *effect* of the reversal of a judgment of acquittal would not be insubstantial. The accused would no longer have the benefit of the conclusive presumption of innocence, which is the effect of an acquittal. But why should he, if the proceedings leading to that conclusive presumption of innocence are fraught with error? Is it not enough if he is relegated to his mere presumption of innocence whose mantle of protection will continue to surround him to the end of his days and beyond, never to be resolved so long as the words, "no person shall be twice put in jeopardy for the same offense," remain in our Constitution? At the same time, he will know, and the rest of the world may know, that that presumption has never rightfully been resolved in his favor.

And what is the importance of all of this? The Su-

preme Court of Nebraska, in *State* v. *Hutter*, 145 Neb. 798, 801, 18 N. W. 2d 203, after conceding that a ruling on the attorney general's exceptions could in no way affect the judgment of acquittal rendered in the action, said:

"* * * Nevertheless, the statute [referring to the state's appeal statute] is a beneficient one. This court is the final adjudicator of questions of criminal law and procedure, yet trial courts are continually deciding such questions from which the defendant does not appeal. The result is that such rulings lack uniformity throughout the various judicial districts of the state. And ofttimes criminals escape conviction through incorrect rulings of the trial court. All this can but tend to demoralize our criminal law system. The statute in question affords the means of securing uniformly correct rulings on similar propositions in future cases and in so doing adds stability and confidence to our criminal procedure." See, also, *State* v. *Wickett*, 230 Iowa 1182, 300 N. W. 268, and *Commonwealth* v. *Ramey*, 279 Ky. 810, 132 S. W. 2d 342.

*In case No. 41178, decision reversed.*
*In case Nos. 41193 and 41194, judgments affirmed.*
*In case No. 41228, judgment reversed.*

MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur in the syllabus and judgments.

ZIMMERMAN and SCHNEIDER, JJ., concur only in paragraphs one, two and three of the syllabus and in the judgments in case Nos. 41193, 41194 and 41228.

TAFT, C. J., dissenting in part. I concur in the judgments in the *Heaton* and *Dodge cases*, but dissent from paragraphs two and three of the syllabus, and from the judgment in the *Benjamin case*.

In my opinion, the two *Dodge cases* (Nos. 41193 and 41194) should be affirmed for the reasons stated by Guern-

sey, J., in the opinion of the Court of Appeals in *State* v. *Dodge* (1967), 10 Ohio App. 2d 92, 226 N. E. 2d 156.[1]

In the *Benjamin* case (No. 41228), the defendant has not been in jeopardy. In such an instance, there is not the same constitutional reason for a decision of the Court of Appeals not affecting the judgment of the trial court. Also, in an instance such as that in the *Benjamin* case (*i. e.*, a ruling on a motion to dismiss which is regarded by Section 2937.04, Revised Code, as the equivalent of a "motion to quash, plea in abatement or demurrer"), the General Assembly in Section 2945.70, Revised Code, expressed an intention that a judgment of reversal by the Court of Appeals should affect the judgment of the trial court.

However, the appellate proceedings provided for in Sections 2945.67 to 2945.70, inclusive, Revised Code, specify that the prosecutor's contentions are to be opposed only by "the trial judge and any attorney appointed by the judge to argue the exceptions against the Prosecuting Attorney * * *." See in particular, Section 2945.69 and last sentence of Section 2945.68, Revised Code.

Thus, under these statutes, the Prosecuting Attorney in the *Benjamin* case may secure a judgment of reversal in Court of Appeals proceedings although the defendant is

---

[1] At first, this court believed that, since Sections 2945.67 to 2945.70, inclusive, Revised Code, merely represented a recodification of Sections 13446-1 to 13446-4, General Code, which had made no provision for a bill of exceptions to the Court of Appeals (see *State* v. *Dodge, supra* [10 Ohio App. 2d 92], at 100), Section 1.24, Revised Code, would require reversal of the *Benjamin* case and would also be dispositive of the *Dodge* cases and the *Heaton* case. However, effective November 1, 1965 (131 Ohio Laws 682, 683, 1734), minor amendments were made to each of these sections apparently for the purpose of making them applicable to criminal appeals from a Municipal Court. These amendments were apparently made because of what was said in my opinion in *Toledo* v. *Crews*, 174 Ohio St. 253, at 255, 188 N. E. 2d 592. In making these amendments, the General Assembly retained the provisions for a bill of exceptions to the Court of Appeals, which had been added by the 1953 recodification of the General Code into the Revised Code. Hence, Section 1.24, Revised Code, will no longer require us to ignore those added words.

not "allowed to appear" in that court "and defend in person and with counsel"; and such judgment will be binding upon the defendant. Certainly, such proceedings in the Court of Appeals would be part of a trial. It necessarily follows that, to give effect to Sections 2945.67 to 2945.70, inclusive, Revised Code, in the *Benjamin case* would be to disregard the requirements of that part of Section 10 of Article I of the Ohio Constitution which reads:

"* * * In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel * * *."

For the foregoing reasons, the judgment in the *Benjamin case* should be affirmed.

I do not understand Judge Schneider's apparent contention that the Court of Appeals should have decided the *Dodge cases* on their merits instead of determining that it had no jurisdiction in either *Dodge case* to decide anything. Neither party made any such contention.

It may be that the proposed bill of exceptions would not support a decision favorable to the prosecution in either *Dodge case.* However, if the Court of Appeals had no jurisdiction to determine whether that bill of exceptions would support such a decision, the Court of Appeals certainly can not be criticized for determining that it had no such jurisdiction, thereby avoiding doing something that it was unanimously of the opinion that it had no power or authority to do, *i.e.,* pass upon the merits of the prosecutor's appeal.

The journal entry of the Court of Appeals, setting forth the judgment appealed to this court in each of the *Dodge cases* reads, so far as pertinent:

"The court * * * finds that Sections 2945.67 to 2945.70, inclusive, insofar as they provide a proceeding for and prescribe a decision by Courts of Appeals under questions determined by a trial court in a criminal case where jeopardy has attached presented by the Prosecuting Attorney to the Court of Appeals by a bill of exceptions filed in that court by leave, are unconstitutional and void."

Section 2 of Article IV of the Ohio Constitution, as admittedly in force prior to the May 7, 1968, election, clearly authorizes a majority of this court to hold a law unconstitutional and void by affirming a judgment of the Court of Appeals declaring such law unconstitutional and void.

The judgment of the Court of Appeals, in each of the *Dodge cases,* represents such a judgment.

Thus, after a majority of this court affirms the judgments of the Court of Appeals in the *Dodge cases,* the statutes there held unconstitutional and void by the Court of Appeals, become unconstitutional and void throughout the state.[2] Then, there is nothing in Section 2 of Article IV as admittedly in effect prior to the May 7, 1968, election, which would authorize less than a majority of this court to revive that law and make it constitutional and valid in one judicial district of the state. This has been recognized by previous decisions of this court. *Johnson* v. *O'Hara* (1951), 156 Ohio St. 117, 100 N. E. 2d 223; *Mele* v. *Mason* (1951), 156 Ohio St. 118, 100 N. E. 2d 224; *State, ex rel. Graf,* v. *Brown* (1959), 170 Ohio St. 37, 162 N. E. 2d 123.

Hence, a majority of this court may reverse the judgment in the *Heaton case,* even though Section 2 of Article IV, as amended on November 7, 1944, is still effective; and it is not necessary to consider whether that section immediately ceased to be effective when the so-called Modern Courts Proposal was approved by the electorate at the May 7, 1968, election.

If it were necessary to consider such an important question of law in deciding the *Heaton case,* I do not believe it should be considered without the benefit of briefs and arguments from counsel.

I have considerable difficulty in understanding why effect should not be given to that part of the amendment

---

[2] The motions for leave to appeal in the *Dodge cases* were allowed on November 15, 1967, and that in the *Heaton case* was allowed on March 13, 1968. Both cases were argued on May 7, 1968, the argument in the *Dodge cases* having been postponed so that they could be argued at the same time as the *Heaton case.*

actually proposed by the General Assembly and approved by the voters, which appears under the heading "EFFEC- TIVE DATE AND REPEAL" and reads, so far as pertinent:

" * * * the amendment, except paragraph (B) of the schedule shall take effect January 10, 1970, and existing Sections 1 and 2, and Sections 3, 4, 6, 7, 8, 10, 12 and 14 of Article IV of the Constitution of Ohio shall be repealed from such effective date. Paragraph (B) of the schedule and the repeal of Sections 12 and 13 of Article XI adopted in 1851 shall become effective immediately upon the adoption of this amendment by the electors of this state."

Of course, the whole proposed amendment, including the above-quoted portion of that amendment, is now a part of the Constitution of Ohio, but that does not support a conclusion that any portion of the proposed amendment approved by the voters should take effect at a time before the proposed amendment that was submitted to and approved by the voters says that that portion shall take effect.

As stated in the opinion in *State, ex rel. McNamara,* v. *Campbell* (1916), 94 Ohio St. 403, 411, 115 N. E. 29, the authority principally relied upon in Judge Schneider's opinion:

"* * * The time when an amendment is to become effective can be submitted to the electors, as in the case of the amendments of 1912 wherein it was expressly provided when they should go into effect * * *."

To the same effect, see the part of paragraph one of the syllabus in that case and in this case beginning in each instance with the word "unless."

At most, omission from the ballot description required by Section 3505.06, Revised Code, of the matter included in the proposed amendment under the heading "EF- FECTIVE DATE AND REPEAL" might support a contention that that description was so misleading as to require invalidation of the election approval of the whole proposed amendment. See *Beck* v. *Cincinnati* (1955), 162

Ohio St. 473, 124 N. E. 2d 120; *Alexander* v. *Toledo* (1959), 168 Ohio St. 495, 156 N. E. 2d 315; and *State, ex rel. Foreman,* v. *Brown* (1967), 10 Ohio St. 2d 139, 148 to 151, inclusive, 226 N. E. 2d 116.

In *State, ex rel. Commissioners of Sinking Fund,* v. *Brown* (1957), 167 Ohio St. 71, 146 N. E. 2d 287, it is stated in the *per curiam* opinion:

" * * * the possibility of misunderstanding seems remote especially when it is remembered that the *full* text of the amendment was published in at least one newspaper in each county once a week for five consecutive weeks preceding the election [as required by Section 1 of Article XVI of the Ohio Constitution], and that the *full* text was duly posted in every polling place [as required by Section 3505.-06, Revised Code, where a condensed text is used on the ballot to describe the amendment]. Of course, a greater degree of accuracy of expression would have resulted if the ballot had contained the lengthy involved technical terms of the entire amendment, but this is the very difficulty sought to be avoided by the statute which expressly states that the 'ballot need not contain the full text of the proposal' and that a 'condensed text' may be substituted therefor. * * *"

Again, in *Thrailkill* v. *Smith* (1922), 106 Ohio St. 1, 138 N. E. 532, it is stated in the opinion, at page 9:

"* * * the time afforded for marking ballots after the voter enters the booth does not permit a study of the printed matter on the ballot * * *. All study of the subject must necessarily end before the voter enters the booth * * *."

Undoubtedly, many voters did read the full text of the proposed amendment, including the part thereof under the capitalized heading, "EFFECTIVE DATE AND REPEAL."

If this court's decision eliminates that part of the amendment, it will necessarily be eliminating a part of the amendment which the voters previously approved, although the court has no means of knowing whether the required majority of those voters would have approved the amendment without the part so eliminated.