THE STATE, EX REL. CURRIN, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL.

[Cite as State, ex rel. Currin, v. Indus. Comm.,
20 Ohio App. 2d 175.]

(No. 9488—Decided November 12, 1969.)

*Mr. William C. Moul,* for relator.
*Mr. Paul W. Brown,* attorney general, *Mr. Walter J. Howdyshell* and *Mr. Robert J. Dodd, Jr.,* for respondents.

STRAUSBAUGH, J. This is an action in mandamus originating in this court and brought by relator, John P. Currin, to require respondents to pay workmen's compensation benefits. We find that the writ should be issued.

The issues are purely a matter of law. There is no dispute of facts. As a result of injuries sustained by relator in the performance of his duties as an employee of the city of Cincinnati on January 27, 1961, he was rendered and remains permanently and totally disabled. Application for compensation was certified by the employer and filed. The claim was allowed by the Bureau of Workmen's Compensation and medical bills of $44,649.11 paid. On January 27, 1963, relator retired and has received a fireman's pension of $340 per month.

On September 30, 1968, relator filed with respondent Industrial Commission an application for the determination of his permanent partial disability. Respondents have refused to award disability benefits to relator and dismissed the application with the following order dated February 27, 1968:

"That the form C-92, Application For The Determination of the Percentage of Permanent Partial Disability, filed September 30, 1968, be dismissed for the reason that the claimant is receiving a pension from the Firemen's Pension Fund and is therefore not entitled to compensation pursuant to Section 4123.02 R. C."

Relator claims that he is not receiving a pension from a fund "established and maintained" by a municipal corporation and that, therefore, he may not be denied workmen's compensation benefits on such basis. Relator claims further that if Section 4123.02, Revised Code, does apply in any way such section is violative of Section 26, Article II, Ohio Constitution, and, therefore, must fail.

Prior to October 1, 1965, Section 741.02, Revised Code, provided that each municipal corporation having a fire department employing two or more fulltime regular members was required to establish and maintain a firemen's relief and pension fund.

Section 4123.02, Revised Code, provided that Sections 4123.01 to 4123.94, inclusive, Revised Code (the Workmen's Compensation Act), do not apply to firemen in municipal corporations where the injured firemen are eligible to participate in any firemen's pension funds established

and maintained by a municipal corporation. It is obvious that Section 4123.02, Revised Code, had reference to the funds established by municipal corporations pursuant to Section 741.02, Revised Code.

The Legislature by an enactment effective November 5, 1965, amended Section 741.02, Revised Code, providing as follows:

"A firemen's relief and pension fund established under this section and the board of trustees of such fund established under this section shall cease to exist on the date the assets of such fund are transferred to the police and firemen's disability and pension fund as provided by Section 742.26 of the Revised Code."

Section 742.26, Revised Code, provides in part:

"On January 1, 1967, the assets and liabilities of each * * * firemen's relief and pension fund, established under Section 521.02 or 741.02 of the Revised Code, shall be transferred to the police and firemen's disability and pension fund. * * *"

For many years the constitutionality of the provision contained in Section 4123.02, Revised Code, has been questioned, even before January 1, 1967. Judge Lamneck's opinion in *State, ex rel. English,* v. *Industrial Commission* (1954), 160 Ohio St. 443, upheld the constitutionality of the provision on the basis that villages "do not have the tax revenues or the number of members in their police and fire departments to support and maintain as liberal pension and relief funds as cities do." In that case a majority of the Supreme Court were of the opinion the provision was unconstitutional; however, since fewer than six constituted the majority, its constitutionality was upheld under the language of Section 2, Article IV of the Ohio Constitution, as it read prior to its amendment effective May 7, 1968. See *Euclid* v. *Heaton* (1968), 15 Ohio St. 2d 65.

In 1954, firemen receiving exactly the same amount of pension from a pension fund established and maintained by a *township* would receive full workmen's compensation, whereas firemen employed by municipal corpora-

tions and receiving exactly the same amount of pension from a pension fund established and maintained by the *municipality* would be subject to Section 4123.02, Revised Code, and would receive no workmen's compensation.

If it was difficult to accept the constitutionality of the provision then, it is totally impossible now. Since January 1, 1967, the police and firemen under the state fund are subject to a deduction of 7 per cent and there is a *single* fund established, maintained and administered by the state. Hence, any distinction between township and municipal funds has now vanished. Grammatically, it is clear that the state-established and -maintained fund is not "established and maintained by a municipal corporation." However, disregarding the grammatical construction of the provision, any attempt to apply the provision to the present state fund would be unconstitutional; to do so would be to treat certain firemen differently than other firemen depending simply upon whether they had been employed by a municipal corporation or employed by a township. Certainly we cannot infer that the Legislature, by allowing the language of the provision to remain, intended to do an unconstitutional act.

Furthermore, it should be noted that Section 4123.95, Revised Code, provides:

"Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees."

Liberal construction requires that Section 4123.02, Revised Code, be read literally; and that it not be interpreted, merely by inference, as excluding coverage of a class of employees.

The writ of mandamus ordering payment from January 1, 1967, is allowed.

*Writ allowed.*

TROOP, P. J., and LEACH, J., concur.