THE STATE OF OHIO, APPELLEE, *v.* BRENNEMAN, APPELLANT.

(No. 72-832—Decided November 21, 1973.)

Mr. *John F. Holcomb,* prosecuting attorney, for appellee.

Mr. *Harry T. Wilks,* for appellant.

46

*Per Curiam.* The first proposition of law presented by both parties in this cause concerns whether the Court of Appeals erred in allowing the state leave to appeal the decision of the trial court in the postconviction relief proceedings.

Section 3(B)(2) of Article IV of the Constitution of Ohio provides, as did its predecessors in analogous language:

"Courts of Appeals shall have such jurisdiction *as may be provided by law* to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the Court of Appeals within the district * * *." (Emphasis added.)

Since the decision in *Mick* v. *State* (1905), 72 Ohio St. 388, 74 N. E. 284, it has been well established that the state may not prosecute error in criminal cases, absent a grant of express authority to do so. Thus, in *Toledo* v. *Crews* (1963), 174 Ohio St. 253, 188 N. E. 2d 592, the state was precluded from appealing the trial court's decision in a case involving an alleged violation of a municipal ordinance, since the governing statute, R. C. 2953.14, limited the state's right of appeal in criminal cases to instances where "a court superior to the trial court renders judgment adverse to the state."

The principle enunciated in *Mick* and *Crews* was reiterated in *State* v. *Huntsman* (1969), 18 Ohio St. 2d 206, 249 N. E. 2d 40, and in *State* v. *Collins* (1970), 24 Ohio St. 2d 107, 265 N. E. 2d 261, the latter holding that the prosecutor in a criminal case could not appeal from a trial court order sustaining a pretrial motion to suppress evidence.[1]

In the case at bar, the General Assembly has provided for the appeal of judgments of the trial court in postconviction relief proceedings. R. C. 2953.23(B) states:

"An order awarding or denying relief sought in a petition filed pursuant to Section 2953.21 of the Revised Code

[1]However, as advocated by the opinion in *Collins*, this right now exists. R. C. 2945.70, effective March 23, 1973; Crim. R. 12(J), effective July 1, 1973.

is a final judgment and may be appealed pursuant to Chapter 2953 of the Revised Code.''

On its face, R. C. 2953.23(B) appears to give the state the right to appeal, at some stage of the proceedings, an order awarding relief in postconviction matters. However, that section expressly provides that such an order is to be appealed ''pursuant to Chapter 2953 of the Revised Code.'' And, just as in *Toledo* v. *Crews, supra* (174 Ohio St. 253), the sole right of appeal granted the state in that chapter is set forth as follows:

''Whenever a court superior to the trial court renders judgment adverse to the state in a criminal case * * * the state * * * may institute an appeal to reverse such judgment in the next higher court * * *.'' (R. C. 2953.14.)

We are again unable to ignore this express limitation upon the state's right of appeal, and find unacceptable appellee's argument that the trial court in a postconviction relief proceeding somehow becomes superior to itself.

Appellee also argues that this appeal can properly be brought pursuant to R. C. 2945.67, 2945.68 and 2945.70, but attention is directed to *Euclid* v. *Heaton* (1968), 15 Ohio St. 2d 65, 238 N. E. 2d 790, and *State* v. *Collins, supra* (24 Ohio St. 2d 107).

In the absence of express authority to do so, the state may not appeal an adverse judgment of the trial court in a postconviction relief proceeding. Therefore, the judgment of the Court of Appeals is reversed and the cause is remanded to that court, with instructions to vacate its judgment and to overrule the state's motion for leave to appeal.[2]

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN and W. BROWN, JJ., concur.

CORRIGAN, CELEBREZZE and P. BROWN, JJ., dissent.

---

[2]In view of the clarity of the law denying the state a right of appeal in this case, we do not reach the question of whether the motion to dismiss, filed on September 28, 1971, should have been sustained. However, see *State* v. *Perry* (1967), 10 Ohio St. 2d 175, 226 N. E. 2d 104.

CORRIGAN, J., dissenting. It is my opinion that the judgment of the Court of Appeals should be affirmed.

In arriving at this conclusion, certain salient facts demonstrated by the record should be borne in mind.

*I*

First, appellant sold one pound and a quarter of marijuana to an undercover policeman for $150. This is a serious felony and three indictments were returned against him, the first containing three counts, namely, possession, possession for sale, and sale. A plea of not guilty was entered on January 27, 1971. Then, after a plea bargaining process was completed by his retained attorney (who is still his attorney), the trial judge, on March 11, 1971, accepted a plea of guilty to the charge of possession for sale, as recited in the second count of the first indictment, and the other two counts, together with the other two indictments, were nolled upon the recommendation of the prosecuting attorney. Obviously, as a result of this plea bargaining, appellant saved himself ten years on a possible minimum sentence if convicted for sale. He admitted to the judge before whom he pleaded guilty that he had made the sale and kept one-half of the sale price as his end of the illegal transaction.

The trial judge carefully and thoroughly advised appellant of his constitutional and other rights before accepting his guilty plea.[3] The matter was referred to the

---

[3]"Mr. Walsh: Your Honor, this is case number 21676, The State of Ohio against Dee Brenneman, which charges the defendant with: Possession of an hallucinogen, possession of an hallucinogen for sale, and sale of an hallucinogen; and in a second count case number 21693, which is one count of: Maintaining a dwelling house resorted to be [by] users of hallucinogen for the purpose of using, for the illegal keeping and for the selling of hallucinogen; and the third being case number 21713 charging that he did unlawfully and with intent to produce hallucinations or illusions possess and have under his control an hallucinogen.

"After a discussion with the Prosecuting Attorney and Mr. Wilks, Mr. Brenneman's attorney, Mr. Brenneman has indicated that he wishes to enter a plea of guilty to the second count of the first indictment No. 21676, that being possession for sale, which is contrary to Section 2719.44

probation department for a presentence report. On April 9, 1971, appellant was sentenced to the Ohio State Reform-

[sic], I believe it is paragraph B, of the Ohio Revised Code. With that indication, the prosecutor has indicated that he will nolle the remaining counts of the two other numbers.

"By the Court: Did you say 3719.44 (B)?

"Mr. Walsh: Yes, sir, possession for sale.

"By the Court: Mr. Wilks, would you bring your client up here please. Now Mr. Brenneman before I can accept your guilty plea I have got to make sure that you understand the nature of this offense and your rights that you would have under the law.

"Now first, have you talked about the matter of entering a guilty plea with your attorney Mr. Wilks? Have you talked about this with your attorney?

"A. Yes, sir.

"When you enter a guilty plea, in effect you are giving up two rights that you have as a citizen of this country. These rights that you have are guaranteed to you under the Fifth Amendment of the Constitution of the United States, and also the Constitution of the state of Ohio. The first right, under the Fifth Amendment, gives you the right as a defendant not to have to say anything or give any incriminating evidence against yourself. Do you understand that?

"A. I understand that.

"When you come into this court and you enter a guilty plea you are saying something against yourself, do you understand that?

"A. Yes, I understand that.

"In effect this is equivalent to what we call a judicial confession; ycu are saying you did something. Now you do not have to do this. Do you understand that this is a privilege that you have?

"A. Yes, sir, I do.

"And do you wish to give that up?

"A. Yes sir.

"There is a second thing you are giving up. The laws of the land say that any body that is accused with any kind of crime has a right to be confronted by their accuser. This is called a right of confrontation because then you and your attorney would have the right to question anyone about whatever they say about you. Whenever you enter a guilty plea, I do not know what evidence the state has to present against you but possibly they are not going to put on a full fledged case because of your guilty plea and it is possible they might not have some witness present that you might question concerning the matter, and you won't have this chance to cross examine such witness. Do you understand what I am saying?

"A. Yes sir.

atory by Judge Robert L. Marrs who had accepted the guilty plea.

"Is it your wish to give up that privilege?

"A. Yes.

"Now again, before I can accept a guilty plea, sir, I must make sure that *you* understand further the matters that you have in front of us. First, you are entitled to a trial by jury of twelve people on the charges which you have pending. You are presumed under our law to be innocent until these charges are proven beyond a reasonable doubt as to every essential element of the offense with which you are charged.

"The burden is on the state. Now when you enter a guilty plea you are giving up this right that you have to this trial by jury—people of this community—to determine whether or not the state has proved these respective charges. Sir, is this your signature on this jury waiver?

"A. Yes sir it is.

"And this is your wish to give up a jury trial is it?

"A. Yes.

"How far did you go in school?

"A. Graduated.

"From high school?

"A. Yes.

"Then you have studied about our system have you?

"A. Yes, sir.

"About the law and judicial trials?

"A. Yes.

"Do you understand everything that I have said so far?

"A. Yes, sir I do.

"First, at this time, sir, are you under the influence of any narcotic drugs or alcoholic beverage? Right now?

"A. No, sir.

"Now have you talked about this indictment with your attorney and the seriousness of it?

"A. Yes I have.

"Now first I would like to tell you the charge with which you are indicating that you wish to plead guilty to is a serious charge. It calls for a penalty—we have here a charge or a violation of Section 3719.44 (B) of the Ohio Revised Code which is the 'sale of a narcotic drug'—which would be imprisonment of not less than ten, not more than twenty years for a first offense. Now sir because of your age it is very likely in the event that this court would cause you to be sent to a penal institution of this state you would go to Mansfield Reformatory and then to Lebanon Correctional Institution, and the first possible time the law states you would become eligible for parole would be thirty-eight months, it would be three years and two months. This is within the sole dis-

At no time did defendant move to withdraw his plea of guilty, and there never has been any assertion made

cretion of the Ohio Pardon and Parole Commission because this court can only give what is known as an indeterminate sentence. It would be ten to twenty years. Do you understand that?

"A. Yes, sir.

"Now in the event that the facts are corroborated and in that event I would send you to such an institution; there is also a *possibility* in each criminal case of probation. Now, sir, has your attorney or any law enforcement officer, by that I mean a police officer either from the Hamilton Police Department or the sheriff's department, or a jailor, or any individual working for the prosecutor's office or the prosecutor— have any of these persons—I repeat—your own attorney, or any attorney, or any law enforcement officer, have they promised you if you would enter a guilty plea to this charge that you would receive easier treatment, or that you would receive probation, or made any promises of any kind to you?

"A. No, sir.

"Are you positive of that?

"A. Yes, sir.

"Do you have any question about that that you would like to ask?

"A. No.

"Now you understand that your attorney is an experienced trial lawyer. By that I mean he would be willing to defend you at a trial on any of these charges, or all of them if you wished. Is that correct Mr. Wilks?

"Mr. Wilks: That's correct.

"You are entering a guilty plea here this morning and it is of your own free will?

"A. Yes, sir.

"You understand that I cannot and will not let any defendant such as yourself enter a guilty plea if you claim in any way to be innocent of this particular charge?

"A. I understand that.

"Are you pleading guilty to this offense?

"A. Yes, sir.

"For any reason other than the fact that you have had marijuana in your possession for the purpose of making sales? That is to selling to other persons this marijuana. Are you entering a guilty plea for any reason other than the fact that you had in your possession marijuana for sale to other persons?

"A. No, sir.

"In your own words tell me what you did?

"A. I sold some marijuana to the police officer.

52

by his counsel that his guilty plea was not made knowingly, voluntarily, and with full awareness of the possible consequences of such a plea.

The criminal appearance and execution docket of the Court of Common Pleas next shows, on May 18, 1971, a motion by defendant "to suspend the further execution of the sentence and place the defendant on probation on such terms as the court determines." The defendant had been conveyed to the Ohio State Reformatory on April 12, 1971, and this motion was made apparently under favor of R. C. 2947.061 and 2947.062, the shock probation statutes. The defendant was thus rightfully pursuing his statutory remedies, and it is noteworthy that any alleged bias or alleged abuse of discretion by the trial judge or violation of any constitutional rights of defendant was not claimed up to this time. The trial judge overruled this latter motion on June 2, 1971.

Almost four months later, on September 27, 1971, defendant, through his same attorney, filed in the Common Pleas Court a pleading styled "Complaint,"[4] pursuant to

"You, of course, did not know he was a police officer?
"A. No, sir, I didn't.
"For what purpose did you have this marijuana in your possession?
"A. Personal use.
"Did you also have it in your possession for the purpose of sale to others?
"A. No, sir.
"But you did sell on this occasion?
"A. Yes sir I did.
"Alright, we will accept the guilty plea and listen to the evidence. Just be seated over there."

"[4]1. Now comes the defendant Dee Brenneman, the complainant, and brings this action pursuant to Ohio Revised Code 2953.21-24.
"2. The complainant states that he is a prisoner in the Lebanon Correctional Institution having pled guilty to an indictment for the crime of possession of an hallucinogen for sale and having been sentenced by Judge Robert Marrs on or about April 7, 1971.
"3. The complainant, Dee Breneman [sic], claims that he was denied his constitutional rights after his indictment in that:
"(a) The trial judge made a prejudicial statement to complainant's counsel shortly after indictment of the complainant.

R. C. 2953.21-24, the postconviction remedy statutes. Among other claims, defendant urges the deprivation of constitutional rights, and alleges that the judgment against him was "void." A hearing on the complaint was requested. Motion to dismiss the complaint was filed on September 28, 1971.

The alleged denial of defendant's constitutional rights in the complaint generally refers to a so-called policy of Judge Marrs of no probation in drug conviction cases, to an asserted prejudicial statement Judge Marrs supposed-

"(b) The complainant pled guilty to the crime of possession for sale of an hallucinogen after having been informed through his counsel that the trial judge informed his counsel that he would be 'considered' for probation upon his plea of guilty to such charge, and although a pre-sentence report was made which was highly favorable towards probation for the complainant, the trial judge, in fact did not 'consider' complainant for probation and continued to follow his policy of 'no probation' in certain so-called 'drug' cases.

"(c) The trial judge has denied to the complainant the benefit of those statutes passed by the Ohio Legislature dealing with probation by having a set policy applying to all defendants in certain so-called 'drug' cases that probation on conviction shall not be available to them regardless of the merits of the individual cases.

"(d) The trial judge through his announced policy of no probation in certain 'drug' cases has unconstitutionally [sic] usurped the power of the Ohio Legislature by expanding the number of cases which are not eligible for probation as set forth in Ohio Revised Code 2951.04.

"(e) The trial judge has, by his policy of no probation in certain 'drug' cases, unconstitutionally caused an unequal administration of the law between defendants in the same county, indicted at the same time for the same offense, but whose cases were considered by the other two Common Pleas judges, by not considering each defendant for probation depending upon the statutory guidelines for probation set out by the Ohio Legislature for the court granting probation or not in each individual case.

"4. Wherefore, your complainant alleges that the judgment entered against him was void under the provisions of the Constitution of Ohio and the United States.

"5. Wherefore, the complainant prays that the court cause notice of the filing of this complaint to be served on the county prosecutor and that he be granted a hearing as provided for in Ohio Revised Code 2953.21, and that upon hearing, the judgment and sentence be vacated and held for naught."

ly made to defendant's counsel after indictment and before trial, and that Judge Marrs *informed defendant's counsel* that his client would be considered for probation, and that, although Judge Marrs referred defendant to the probation department for a presentence report, he, in fact, did not consider complainant for probation. This latter occult assertion would seem to have no standing in a court of law. It should be observed that if Judge Marrs talked to counsel for defendant, *ex parte*, the prosecutor was not informed of such meeting. As to any policy of Judge Marrs regarding probation in drug cases, if such was the case, objection to his handling the case could and should have been made before the plea of guilty was entered.

As to defendant's attorney urging in his complaint that Judge Marrs' judgment was void, the Court of Appeals accurately pointed out that this judgment is not void, under *State* v. *Perry* (1967), 10 Ohio St. 2d 175.

## II

There are three judges in the Common Pleas Court of Butler County. Judge Marrs is one of the judges, and he had accepted the defendant's guilty plea and imposed sentence because the case was assigned to him. When the postconviction complaint was filed, under the same case number (21676), we may assume that Judge Marrs, in the orderly handling of pleadings in a case assigned to him, would have received the pleading for proper disposition. Judge Marrs did not withdraw from the case nor did he disqualify himself, according to the record.

Section 5(C) of Article IV of the Ohio Constitution provides the only method under Ohio law for passing on the disqualification of a judge of the Court of Common Pleas in any cause or matter before that Common Pleas Court.[5]

---

[5]Section 5(C) of Article IV of the Ohio Constitution reads:

"The Chief Justice of the Supreme Court or any judge of that court designated by him shall pass upon the disqualification of any judge of the Courts of Appeals or Courts of Common Pleas. Rules may be adopted to provide for the hearing of disqualification matters involving judges of courts established by law."

There was no affidavit of bias or prejudice filed to have Judge Marrs disqualified from hearing this new matter in the case. There had been no objection to the judgment of Judge Marrs at the time of sentencing, nor had there been any subsequent motion by defendant to withdraw his plea of guilty on the ground he had been coerced or misled by Judge Marrs into entering such a plea. Neither had there been any motion by defendant's attorney to vacate the judgment imposed by Judge Marrs. Rather, defendant's counsel ran his string out until after Judge Marrs had overruled defendant's motion for shock probation on June 2, 1971, almost two months subsequent to sentencing, without questioning the propriety of Judge Marrs' previous actions. Nor was there any further action by defendant's counsel until the postconviction remedy complaint of September 27, 1971.

Then, on September 29, 1971, a motion was filed in the Common Pleas Court of Butler County in the case. On the criminal appearance and execution docket it was styled "Motion to Supreme Court for assignment of judge filed." No motion, as such, was filed in the Supreme Court. The pleading itself bore the caption and case number of *State of Ohio* v. *Dee Brenneman,* and reads:

"To the Presiding Judge of the Butler County Common Pleas Judges.

"Now comes Dee Brenneman by and through his attorney, Harry T. Wilks, and moves that the presiding judge of the Butler County Common Pleas judges apply to the Supreme Court of Ohio for the appointment of a judge to sit and hear the complaint filed by Dee Brenneman in the above entitled case for the reason that the facts and evidence which will be presented in the complaint will necessarily involve the trial judge Robert Marrs and that to insure an impartial tribunal, another judge be assigned."

*No hearing was had on that motion.*

It should be observed at this point that there is no authority under Ohio statutes for such a motion or procedure. If an affidavit of bias and prejudice had been seasonably filed, action thereon would have been required.

The next reference to this strange motion appears in a document styled "Decision," with the caption and case number of the instant case, which overruled the state's motion to dismiss the complaint for postconviction relief. It reads, in part:

"Eley, J: (By Assignment)

"* * *

"On September 29, 1971 the defendant moved the Presiding Judge of the Court of Common Pleas to apply to the Supreme Court of Ohio for appointment of a judge to hear defendant's complaint as it would directly involve the trial Judge Robert Marrs and that said assignment was necessary to insure an impartial tribunal.

"The record is silent as to whether or not a hearing was held on said motion or whether Judge Marrs concurred therein. [Parenthetically, if the record does not reflect a hearing, then the presumption is that there was no hearing.] Apparently the presiding judge [Judge Fred B. Cramer] considered the motion well taken.

"On October 5, 1971 this judge received an assignment from the Chief Justice of the Supreme Court of Ohio."

The assigned judge was Judge Howard G. Eley of the Common Pleas Court of Darke County.

There is no formal document in the records of the Supreme Court of Ohio requesting that a Common Pleas Court judge be assigned to Butler County. However, there is a copy of a covering letter to Judge Eley, dated October 5, 1971, from the Administrative Director of the Supreme Court of Ohio indicating that an enclosure authorizes him to sit in the Common Pleas Court of Butler County on October 15, 1971, at 9:30 a. m. The assignment would necessarily bear the signature of the Chief Justice. Apparently, the assignment was made as a result of a telephoned request from Judge Cramer.

Entries on the court docket indicate that Judge Eley overruled the motion to dismiss and set an evidentiary hearing on the complaint for December 16, 1971. On De-

cember 28, 1971, Judge Eley vacated the judgment and sentence imposed by Judge Marrs, ordered the return of defendant Brenneman from Lebanon Correctional Institution to the Butler County jail, and set bond of $5,000, "to await the appointment of a judge outside Butler County, who is unfamiliar with the circumstances of this case to determine if defendant should be sentenced or placed on probation." This quotation was contained in a journal entry dated December 30, 1971, and signed by Fiehrer, J. Judge Arthur J. Fiehrer is one of the three judges of the Common Pleas Court of Butler County. That journal entry followed a "Decision" by Judge Eley, filed on December 28, 1971. It is in the form of an opinion and comprises 22 pages. It concludes:

"It is therefore the opinion and judgment of this court that the defendant Dee Brenneman was denied his constitutional rights when he entered a plea of guilty, thereby waiving said rights and relying upon the trial court's commitment to consider him for probation, when in truth and in fact it was impossible for said court to exercise sound discretion thereon.

"Pursuant to Section 2953.21 O. R. C. the court having found grounds for granting relief it is hereby ordered that the sentence and judgment herein be vacated and set aside.

"It is further ordered that the defendant Dee Brenneman be returned in custody from his present place of confinement to the Butler County Jail.

"It is further ordered that said cause be assigned to a non-resident judge with no knowledge of what has transpired for consideration and judgment as to whether the ends of justice require the immediate sentencing of the defendant on his plea of guilty.

"It is also ordered that pending finalization that the defendant be admitted to bond in the sum of five thousand ($5000) dollars.

"An entry will be prepared in accordance with exceptions to the plaintiff.

"In the event this decision be misinterpreted, for the record, this court shares Judge Marrs concern over our increasing traffic in and the use of drugs. However, this court refuses to be stampeded into an unrealistic imposition of sentences therefor as the only means to the end.

"This court believes that society can be best served by rehabilitating an offender wherever possible. Institutionalization has failed to deter or to even slightly curb the growing rate of other crimes which plague our country. Wherein then lies the rationale that it will do so in drug cases?"

### III

The majority opinion herein cites *Toledo* v. *Crews* (1963), 174 Ohio St 253, and *State* v. *Collins* (1970), 24 Ohio St. 2d 107, as being, in some way, authority for their conclusion here. *Toledo* v. *Crews* decides only that: "There is no right of appeal in a criminal case involving a charge of violation of a municipal ordinance except from a judgment of conviction." That is what the syllabus recites.

It is the law of Ohio that "* * * the syllabus of a decision of the Supreme Court of Ohio states the law of Ohio. However, that pronouncement must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by the court. * * * When obiter creeps into a syllabus it must be so recognized and so considered." *Williamson Heater Co.* v. *Radich* (1934), 128 Ohio St. 124, 126. See, also, *Baltimore & Ohio Rd. Co.* v. *Baillie* (1925), 112 Ohio St. 567.

In *Crews,* the defendant demurred to an affidavit charging him with driving while intoxicated, on the ground that the ordinance was unconstitutional because of a conflict with a state statute. The Municipal Court sustained the demurrer and discharged defendant. The Court of Appeals held that no such appeal was authorized.

This court held only that there is no right of appeal in a criminal case involving a charge of violation of a municipal ordinance except from a judgment of conviction.

In *Collins,* the syllabus reads:

"The state may not prosecute an appeal in a criminal

case from an order sustaining a pre-trial motion to suppress evidence.''

Neither of these two cases, *Crews* or *Collins*, has any thing to do with a postconviction remedy and the right of the state to appeal a decision adverse to it in such a proceeding.

## IV

R. C. 2953.23(B) provides that ''an order awarding or denying relief sought in a petition'' for postconviction relief may be appealed. The statute gives the right to both parties. The key words in the statute are ''awarding or denying,'' which plainly and obviously gives the right to the state to appeal in a case in which the defendant has been awarded relief sought in a petition. Manifestly, the General Assembly intended that the state have such a right of appeal.

The majority of this court seem to feel that the reference to R. C. Chapter 2953 in R. C. 2953.23(B) limits the state's right of appeal. I do not agree. The reference to Chapter 2953 appears to be a vain reference. R. C. 2953.14 allows state appeals but only from courts ''superior'' to the trial court. Postconviction orders are made by the trial court and therefore R. C. 2953 appeals appear to be inapplicable. The intent of the statute is clear and to adopt one of the important legal maxims of interpretation, *verba intentioni, et non e contra, debent inservire*: words ought to be made subservient to the intent, and not vice versa. In any event, R. C. Chapter 2953 refers to a court superior to the trial court, and in this case Judge Eley, in a fantastic succession of events, exercised purported judicial authority superior to Judge Marrs' when he vacated and set aside Judge Marrs' sentence and judgment of the defendant. That's what this case is all about. Clearly, there does exist a right of appeal by the state under the facts and applicable law of this case.

The opinion and judgment of the Court of Appeals is impeccably correct and should be affirmed.

CELEBREZZE and P. BROWN, JJ., concur in the foregoing dissenting opinion.