THE STATE OF OHIO, APPELLEE AND CROSS-APPELLANT, *v.* LEWIS, APPELLANT AND CROSS-APPELLEE.

(No. 14-81-2—Decided January 25, 1982.)

*Mr. R. Larry Schneider,* prosecuting attorney, and *Ms. S. Adele Shank,* for appellee and cross-appellant.

*Mr. John Eufinger,* for appellant and cross-appellee.

COLE, P.J. This is an appeal from a judgment of conviction and sentence of the defendant-appellant by the Court of Common Pleas of Union County for four counts of gross sexual imposition. The defendant had been originally indicted by the grand jury for ten offenses. At the commencement of trial the prosecutor moved to *nolle prosequi* Counts 1, 7 and 10. At the close of the state's case in chief three counts, 2, 5 and 6, alleging rape were dismissed by the court upon motion of the defendant. This left four counts (3, 4, 8 and 9) of which the defendant was convicted.

The defendant appeals from his conviction and the state has filed a separate notice of appeal as to the dismissal of the rape charges. This second or cross-appeal will be discussed after we have disposed of the appeal by the defendant.

The defendant makes three assignments of error which will be separately considered.

I. It is asserted that the trial court erred in failing to properly examine the two juvenile witnesses for the prosecution prior to determining their competency to testify. It is asserted the examination was too brief and too superficial.

Evid. R. 601(A) provides:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly and; * * *"

In R.C. 2317.01 a similar statement of the criteria appears.

Under this statement all witnesses, including children, are competent to testify except those under ten who:

1. Appear incapable of receiving just impressions of the facts and transactions as to which they are examined; or

2. Are incapable of relating them truly.

Two minor witnesses were called by the prosecution, one of whom was Hope Ann Lewis, eight years of age at the time of trial. The trial court examined her upon voir dire. This court also has before it the entire subsequent testimony of this witness.

It is first clear that the witness could answer questions, name her brothers, sisters, identify her teacher and her grade in school and was aware of the necessity under some sanctions of telling the truth. There is little question the second requirement of Evid. R. 601(A) was met.

As to the first requirement the testimony on the voir dire was general:

"* * *

"Q. All right. When these things happened — you know what this lawsuit is about, don't you, Hope?

"A. Yeah.

"Q. When these things happened, do you remember where you were living?

"A. Yes.

"Q. And where was that?

"A. West Mansfield.

"Q. Right in the town, or out in the country?

"A. Right in the country.

"Q. Okay. And do you remember those things?

"A. Yes.

"Q. All right. And can you, will you be able to tell us about those things if you're asked?

"A. Yes."

This generally indicates that the witness was capable of receiving factual impressions of the events involved. If any question remained as to this issue it was answered by the subsequent testimony in chief and on cross-examination when the child identified clearly pictures of the sites of one offense, identified her father, the defendant, and explicitly described the offense. If the trial court's examination was brief and this constituted error any prejudice from this was clearly eliminated by the subsequent testimony which fully justified a finding that the child was capable of perceiving the facts as to which she testified.

In *Barnett* v. *State* (1922), 104 Ohio St. 298, the court in dealing with a similar problem stated, at page 301:

"* * * The trial judge, who saw the children and heard their testimony and passed on their competency, was in a far better position to judge of their competency than is this court, which only reads their testimony from the record, and that record certainly does not show any abuse of discretion on the part of the trial judge in holding them to be competent witnesses. * * *"

There are many factors inherent in the mere presence of the witness and the character of the responses which are indicative of the capability of that witness to accurately perceive events. These are not available to this court for consideration. Based upon the record we cannot conclude that there was insufficient evidence as to competency before the trial court or that the determination of the trial court was prejudicial to the appellant in the light of the whole record.

The second witness was Sharon Lewis who testified she was just past ten years of age. The evidentiary exclusion applies only to witnesses under ten and we would conclude this pertains to the time of the testimony since both the appearance of incapability and the ability to relate are matters to be determined at the time for trial. Trial here occurred in February 1981 and the rules of evidence were effective July 1, 1980.

In any event this witness was examined by the court and displayed similar or greater capacities. There was no objection made by the defendant to her testimony on this ground, and the testimony of the witness both on direct and cross-examination clearly demonstrates no prejudice occurred as a result of the court's determination of competency upon the more limited voir dire. Competency is adequately demonstrated.

The assignment of error is not well taken.

II. It is asserted that the court erred in permitting excessively leading questions in the direct examination of these two witnesses.

The Rules of Evidence provide in Rule 611(C):

"(C) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an

adverse party, interrogation may be by leading questions."

The exception "except as may be necessary to develop his testimony" is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court.

In 56 Ohio Jurisprudence 2d 726-727, Witnesses, at Section 300, it is stated:

"There may be circumstances arising from the conduct of a witness which require that leading questions be put to him on his examination in chief. The primary purpose of ascertaining and developing the truth may sometimes justify or demand leading questions. This matter must depend upon the judgment of the court. The allowance or refusal of leading questions in the examination of a witness must very largely be subject to the control of the court, in the exercise of a sound discretion. The existence in the court of such a discretion is fundamental and is generally recognized."

The statements by both witnesses as to the commission of the offenses by the defendant were not in response to questions of a leading character.

Hope Lewis, aged eight, stated:

"* * *

"Q. Okay. Will you tell the jury and the Court what happened one day or one night on a picnic table outside of the house?

"A. My dad and I went outside and sit [sic] on the picnic table. He took my clothes off and kissed my privates.

"Q. Okay. Did he touch your privates any other way?

"A. Yes.

"Q. Could you tell us how he did that?

"A. His fingers.

"* * *"

Again:

"Q. Okay. Hope, we're going to go on and talk about some other times that similar things happened. Okay. Do you remember a time when you were on the couch?

"A. Yes.

"Q. Okay, Hope. Why don't you look at me and tell me what happened that time.

"A. He stuck his finger up me in my privates."

Again:

"Q. The next time that something happened between you and your father, did it happen in the kitchen?

"A. Yes.

"Q. Okay, Hope. Hope, what happened in the kitchen?

"A. Same thing on the couch.

"Q. Okay. Now, was that in the same house?

"A. Yes.

"Q. Okay, Hope. And was there another time in the kitchen?

"A. Yes.

"Q. Okay. And what happened different the second time in the kitchen than happened the first time?

"A. He stuck it in back instead of the front.

"Q. Okay. Did he also try to kiss you again?

"A. Yes.

"Q. And could you describe how he tried to kiss you, like you did before? Where did he try to kiss you?

"A. Privates, in front.

"Q. Okay. Hope, did he ask you to kiss him back?

"A. Yes."

As to Sharon:

"Q. Okay. Will you tell us what happened? Talk loud, I'm going to stand back here.

"A. Well, Hope — I went to bed one night and my — Hope and my dad were up, and Hope, my dad, took their clothes off and then they went outside and played around.

"Q. And what do you mean they played around, Shari?

"A. Played around with each other's privacy [sic]."

The court permitted leeway to the prosecution in to some extent developing such basic testimony to get specific detail and to pinpoint or attempt to pinpoint times. We have examined the testimony of both witnesses and cannot reasonably conclude that the trial court exceeded the parameters of a sound discretion.

The assignment of error is not well taken.

III. It is asserted that the trial court erred in not granting the defendant's motion for an acquittal made at the close of the state's case.

The defendant after the state rested proceeded to undertake a defense, took the stand and testified. This waived any error as to action by the trial court at the end of the state's case, but the issue of sufficiency of the state's evidence is preserved by a motion to renew his previous motion made by the defendant at the close of all the evidence. The basis of this court's ruling must be the total evidence before the court at this later time.

The appellant asserts that the state failed to prove the age of the victim and the time frame of the offense. It is asserted that the offense must concern a person less than thirteen years of age and that this was not established by an appropriate degree of proof.

The victim, Hope Lewis, testified her age was eight. The mother further testified she thought Hope was eight. The Rules of Evidence provide under Rule 803(18):

"Reputation concerning personal or family history. Reputation among members of his family by blood, adoption, or marriage or among his associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption or marriage, ancestry, or other similar fact of his personal or family history [is not excluded by the hearsay rule]."

There was further, before the jury, the appearance of the victim when she was on the witness stand.

In *Jacobs v. State* (Cuyahoga App. 1929), 7 Ohio Law Abs. 326, in a criminal case involving delinquency of a female under eighteen, the court, while stating the jury could not simply guess at the age from appearance, went on to state, at page 327:

"This, of course, would have application where there is no other evidence excepting the appearance of the girl but inasmuch as we have the unchallenged testimony of the girl herself we do not think that this case applies."

We also note that the defendant on being asked the ages of his children responded "ten and eight and two" and also included "ten, eight, seven, six * * *." Thus no child was over thirteen, the critical age. He said he had five children and although his response is confused he in effect stated they were ten, eight, seven, six and two. Sharon testified her age was ten plus and hence Hope could be at the most eight. He further testified she was in the third grade — a grade generally compatible with an age of eight.

We conclude there was sufficient evidence to justify a finding of guilty beyond a reasonable doubt.

The appellant further asserts the time of the offense was not sufficiently established.

We find the evidence as to times was the subject of conflicting testimony and the resolution of such conflict was a matter for the trier of fact.

The assignment of error is not well taken and the judgment of the trial court as to the judgment of conviction and sentence is affirmed.

The appellee as cross-appellant contends that the trial court erred in dismissing the three counts of rape on defendant's motion for acquittal. It is contended that the state may so appeal pursuant to the provision of R.C. 2945.67(A):

"A prosecuting attorney, village

solicitor, city director of law, or the attorney general may appeal as a matter or [*sic*] right any decision of a trial court in a criminal case, or any decision of a juvenile court in a delinquency case, which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief pursuant to sections 2953.21 to 2953.24 of the Revised Code, and may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case or of the juvenile court in a delinquency case."

Although this section is quite broad as written it must be subject to certain inherent constitutional limitations. The predecessor of this statute, also broad in scope, was held to be so limited. In *State v. Dodge* (1967), 10 Ohio App. 2d 92, 94 [39 O.O.2d 179], this court held that "it has * * * long been recognized in Ohio that no review as of right exists on behalf of the state after the defendant has been put in jeopardy. * * *" In *Euclid v. Heaton* (1968), 15 Ohio St. 2d 65 [44 O.O.2d 50], wherein the *Dodge* case was further considered by the Supreme Court, the fourth paragraph of the syllabus states:

"Sections 2945.67 to 2945.70, inclusive, Revised Code, are unconstitutional insofar as they permit the prosecutor in a criminal case to institute proceedings to review a judgment of the trial court, except where the judgment of such court decides 'a motion to quash, a plea in abatement, a demurrer, or a motion in arrest of judgment,' or the equivalent thereof."

The fundamental limitation is constitutional in character predicated upon the prohibitions against double jeopardy and is fully applicable to the present as well as the former version of the statute.

See, also, *State, ex rel. Sawyer,* v. *O'Connor* (1978), 54 Ohio St. 2d 380 [8 O.O.3d 393].

Did jeopardy attach in the present case? The action of the trial court occurred long after the jury had been sworn and evidence had been presented by the state. In fact the case for the prosecution had been completed. In 25 Ohio Jurisprudence 3d 663-664, Criminal Law, Section 378, it is said:

"As a general rule, a person is in legal jeopardy when he is put on trial, after a proper arraignment and plea, before a court of competent jurisdiction, on an indictment or information which is sufficient in form and substance to sustain a conviction, and a legally constituted jury has been charged with his deliverance. While there are decisions entitled to great respect which hold that a person is not put in jeopardy unless a verdict has been rendered in the case, the weight of authority is otherwise, and the rule is well settled in Ohio that jeopardy attaches the moment the jury is sworn. While there are apparently no Ohio Supreme Court or Court of Appeals cases deciding the question, it would appear that in a non-jury trial, jeopardy attaches when a witness is sworn and testimony is taken. And, this is the federal rule. But for the purpose of applying the constitutional provision that no person shall be twice put in jeopardy for the same offense, the foregoing rules would appear merely to establish that point in the proceedings at which the defendant becomes entitled to insist upon proceeding to verdict or, in the alternative, exoneration from further liability on the same charge if the proceedings are halted before verdict without his consent and without legal justification for their interruption or termination."

Here applying this rule, jeopardy attached. However, cross-appellant asserts the action of the trial court was based on an error of law in definition of a term and not upon insufficient evidence. We are cited to *United States* v. *Scott* (1978), 437 U.S. 82. In that case the dismissal, although after the submission of evidence, was based upon a ground which had fully

accrued *prior* to trial, *i.e.*, because the defense had been prejudiced by delay caused by the government. In the present case, however, the actual ground of dismissal was the failure of the state to produce sufficient evidence. The state now seeks to claim this was incorrect because of the trial court's application of the law. The purported error arose from the trial and from events occurring in the course of the trial. It did not relate to events fully completed prior to trial, the decision alone being announced after that moment.

We conclude that here under the provision of the United States Constitution and the provisions of Section 10, Article I, Ohio Constitution, the present attempted appeal is beyond the valid constitutional scope of R.C. 2945.67(A) and that this court has no jurisdiction to consider said appeal.

The cross-appeal is therefore dismissed.

*Judgment affirmed and appeal by state dismissed.*

MILLER and GUERNSEY, JJ., concur.