OPINION
This timely appeal arises from a Mahoning County Court of Common Pleas jury verdict finding Appellant, Stephen Burroughs, guilty of aggravated murder with a firearms specification and guilty of aggravated robbery, also with a firearms specifications. For the following reasons, we affirm the trial court jury verdict.
In the early morning hours of November 2, 1991, Appellant lost approximately two thousand dollars ($2000.00), either by gambling or when fleeing from police, and planned to rob someone to recoup his loss. Around 8:00 a.m. on that morning, Appellant and two friends, Freddie Taylor and Robert Tracy Green, were at the Quick Pick Market on Market Street in Youngstown, Ohio. The record reflects that while Green waited outside, Appellant produced a 9mm handgun before he and Taylor entered the store. Inside the store, Appellant fired at least two shots into the head of Husam Halaweh, the owner of the store. Halaweh died at the scene. Appellant and Taylor stole money, beer and lottery tickets still in the dispensers.
Appellant was charged with one count of aggravated murder with a firearm specification and a death specification and one count of aggravated robbery with a firearm specification. Appellant pleaded not guilty and waived his right to a speedy trial.
A jury trial commenced on December 14, 1992. Pursuant to their plea agreements, Green and Taylor testified against Appellant. The state also presented the testimony of Deneen Duvall, Appellant's girlfriend and the mother of his child. During her direct examination, the prosecutor requested permission to "cross examine" Duvall. Over Appellant's objection, the trial court permitted the state to ask leading questions of its own witness.
On December 14, 1992, a jury found Appellant guilty of aggravated murder with a firearm specification. The-jury also found Appellant guilty-of aggravated robbery with a firearm specification. On January 20, 1993, pursuant to the jury's recommendation, the trial court sentenced Appellant to life imprisonment with parole eligibility after thirty (30) years on the aggravated murder conviction and three (3) years actual incarceration on the firearm specification to be served prior to and consecutive with the sentence for aggravated murder. The court also sentenced Appellant to an indefinite term of ten (10) to twenty-five (25) years imprisonment for aggravated robbery with a minimum ten (10) years of actual incarceration. The court further ordered that all sentences be served consecutively with each other.
On January 21, 1993, Appellant filed his notice of appeal. His first assignment of error alleges:
 "THE COURT ERRED IN PERMITTING THE STATE TO CROSS EXAMINE A WITNESS CALLED TO THE STAND BY THE STATE."
Appellant argues that the trial court erred in permitting the prosecution to "cross examine" its own witness, Deneen Duvall. Appellant contends-that he was prejudiced as Duvall's testimony was necessary to buttress the incriminating testimony of his accomplices, Robert Tracy Green and Freddie Taylor. Specifically, Appellant argues that through "cross examination" of Deneen, the state was able to establish that the lottery tickets were located in the room shared by Deneen and Appellant and that this allowed the jury to infer that since the lottery tickets were in Appellant's possession, that Appellant must have taken them during the robbery.
Appellant argues that the only manner in which the state can cross examine its own witness is pursuant to Evid.R. 607 which permits a party to impeach its own witness, "* * * by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." Evid.R. 607. Appellant contends that although Duvall made a prior statement to police, the prosecution made no attempt, to demonstrate surprise or damage stemming from Duvall's testimony at trial. Appellant further contends that although Evid.R. 611 (C) permits counsel to ask leading questions of a hostile witness, an adverse party or a witness identified with an adverse party, the prosecution opted "for all out cross examination" under Evid.R. 607.
"A decision as to whether a party may pose leading questions on direct examination is left to the sound discretion of the trial court." State v. Talley (Nov. 5, 1998), Mahoning App. No. 97 CA 72, unreported, 8, citing Ramage v. Central OhioEmergency Serv., Inc., (1992), 64 Ohio St.3d 97, 111. "Absent an abuse of discretion, such a decision will not be overturned on appeal." Id. "The term "abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Statev. Adams (1980) 62 Ohio St.2d 151, 157. Our review of the record reveals no abuse of discretion.
According to Evid.R. 611 (A), "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Furthermore, Evid.R. 611 (C) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony * * * When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."
The record before us does reflect circumstances which reveal that the court was correct in allowing the state to ask leading questions of its own witness. In reviewing the record of Ms. Duvall's testimony, prior to the prosecution's request to "cross examine" her, there were at least eight instances where Duvall's answers to the prosecutor's questions were inaudible, requiring either the prosecutor or the court to ask her to repeat her statements. (Tr., 285, 286, 288, 289, 290.) In fact, the prosecutor asked Duvall three times to speak up because of her imperceptible responses. (Tr. 285, 286, 289.) Based on this alone, the court was within its discretion to take steps to control the mode of questioning to avoid needless consumption of time. Evid.R. 611 (A). Furthermore, the exception which disallows leading one's own witness, "except as may be necessary to develop his testimony," provides the trial court with great discretionary latitude. State v. Lewis (1982),4 Ohio App.3d 275, 278. Here, the trial court was permitted to allow a change in the mode of questioning to efficiently develop Duvall's reluctant testimony.
Importantly, the record reflects clearly that Duvall was a witness identified with Appellant. She testified that Appellant was her boyfriend (Tr. 286) and that he was also the father of her child. (Tr. 287). This identification with Appellant alone would permit the prosecution to ask leading questions of her on direct examination pursuant to Evid.R. 611 (C)
The record also reveals that Appellant was a hostile witness. Duvall unequivocally indicated that she did not want to be on the stand testifying. (Tr. 287.) Furthermore, Duvall testified that she recalled making a statement to police on December 6, 1991 but that she could not recall everything contained therein. (Tr. 292-293.) When presented with a copy of the statement, Duvall confirmed that she made and signed the statement. (Tr. 293.) However, after reading the statement, Duvall indicated that it did not refresh her recollection. (Tr. 293.) Duvall testified that she remembered seeing a bag (which apparently contained money and lottery tickets taken in the robbery) in her apartment after Appellant, Taylor and Green arrived there but stated that she did not see who brought the bag into the apartment. (Tr. 294.) Duvall then testified that the bag was sitting on the floor but that the three men did nothing with it. (Tr. 294.) In response to Duvall's inability to recall the information in the statement, a copy of which she reviewed, the following exchange took place between the prosecutor and Duvall:
 "Q. Did you talk to me around noon today or 1:00 o'clock?
"A. Yes.
 "Q. And at that time did you remember everything that happened?
"A. Yes.
 "[Prosecutor] : Ask permission to cross examine this witness.
[Defense counsel] : Objection.
"The Court: Overruled. You may proceed."
(Tr. 295.)
Given that Duvall was a reluctant witness, that she claimed she could not recall the particulars of her statement to police (even when reviewing a copy of the statement) and that she admits that her recollection had not been faulty earlier in the day, it was proper to treat her as a hostile witness. Appellant is mistaken in arguing that the state invoked Evid.R. 607 in order to impeach Duvall's testimony. There is no indication on the record that the prosecution sought to impeach Duvall or that the prosecution ever raised Evid.R. 607. Rather, our review of the record on the whole indicates that the prosecution was unable to develop any material testimony from Duvall, whether due to a sincere inability to recall her prior account or due to the fact that she was uncooperative, and sought "cross examination" as a means to develop her testimony.
As there were several bases on which the trial court could have permitted the prosecution to ask leading questions of its own witness, we can not say that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. We therefore overrule Appellant's first assignment of error.
Appellant's second assignment of error alleges:
 "THE VERDICT OF GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that the state failed to introduce competent and credible evidence that Appellant was guilty of the crimes charged beyond a reasonable doubt. Appellant contends that as the state presented no scientific or forensic evidence linking Appellant to the crime, the state relied solely on the conflicting testimony of accomplices. Appellant further states that Ohio law prohibits conviction based solely on uncorroborated accomplice testimony. State v. Lundy (1987)41 Ohio App.3d 163; R.C. § 2923.03(D).
We may reverse a conviction as being against the weight of the evidence only after the State has presented both sufficient evidence to support a conviction and has persuaded the fact finder to convict. State v. Thompkins (1997), 78 Ohio St.3d 380,388, citing Tibbs v. Florida (1982), 457 U.S. 31, 41-43. To reverse Appellant's conviction based upon the weight of the evidence, we must find that, "* * *the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. For such a reversal, all three judges of the reviewing panel must unanimously concur. Thompkins, 389. A witness with strong motivation to fabricate his testimony is not incompetent to testify. Rather, it is well within the province of the jury, in determining a defendant's guilt beyond a reasonable doubt, to determine the weight to be given to such testimony. State v. Sneed (1992), 63 Ohio St.3d 3, 9.
Prior to its amendment in September, 1986, R.C. § 2923.03(D) prohibited a conviction based, "* * *`solely upon the testimony of an accomplice, unsupported by other evidence.'" State v.Lundy, supra, 163, quoting former R.C. § 2923.03(D). Since its amendment, however, R.C. § 2923.03(D) provides that the trial court must advise the jury as to the evidentiary value of accomplice testimony. R.C. § 2923.03(D) provides:
 "(D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with * * * an offense, the court, when it charges the jury, shall state substantially the following:
 "`The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or selfinterest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 "It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
In the present case, the trial court charged the jury in compliance with R.C. § 2923.03(D).
Appellant was charged with felony murder, in violation of R.C. § 2903.01(B) with a death penalty specification in violation of R.C. §§ 2929.04 (A) (7) and 2941.41. Along with these charges, he was also charged with a firearm specification in violation of R.C. §§ 2941.141 and 2929.71 (A). R.C. § 2903.01 (B) provides that, "No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery or robbery * * *" Appellant was also charged with aggravated robbery with a firearm specification in violation of R.C. §§ 2911.01 (A) (1) (B), 2941.141 and 2929.71 (A). Ohio's aggravated robbery statute, R.C. § 2911.01, provides:
 "(A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after such attempt or offense, shall do either of the following:
 "(1) Have a deadly weapon or dangerous ordnance * * * on or about his person or under his control;
"* * *"
At trial, Green testified that while still outside of the Quick Pick Market, Appellant stated that he was going to rob somebody. (Tr. 67-68.) He then testified that Appellant pulled out a 9mm pistol, cocked the hammer and handed the pistol to Taylor. (Tr. 68.) Green also stated that he saw Appellant and Taylor enter the store when as he was leaving the parking lot. (Tr. 70-71.) Green testified that when he returned to the store a few minutes later, he witnessed Appellant and Taylor exit the store. (Tr. 71.) Green stated that Appellant's pockets appeared to be stuffed and that he noticed some food stamps in one of the pockets. (Tr. 71.)
Green also testified that he left the store's parking lot with Appellant and Taylor and that in the car, Taylor had a beer and was pulling lottery tickets from the dispensers. (Tr. 75.) Green stated that they drove to a parking lot in Mill Creek Park where Appellant discarded the ticket dispensers over the side of a hill. (Tr. 76.) He said that they drove to Duvall's apartment building and that Appellant carried in a trash bag filled with lottery tickets. (Tr. 76-77.) Green testified that while in the apartment, Taylor told the others there that he entered the store and asked Mr. Halaweh for change and then shot him and that Appellant proceeded to grab the gun from Taylor, jump over the counter and shoot Halaweh two more times. (Tr. 78.)
Taylor testified that prior to entering the store, Appellant stated that he wanted to rob the store owner. (Tr. 227.) In Taylor's version of events, Appellant showed him a 9mm handgun before they entered the store and once inside, Appellant asked for change for twenty-dollar bill and then for a pack of cigarettes. (Tr. 228.) Taylor testified that Appellant fired a shot at Halaweh when he opened the register to make change for the cigarettes. (Tr. 230.) Taylor further stated that when Halaweh fell, Appellant jumped over the counter and fired two shots into Halaweh's head. (Tr. 230-231.) Taylor said that he went to the back of the store and took a six pack of beer while Appellant took a box of lottery tickets. Then the two left the store. (Tr. 231.)
Based on the testimony of Green and Taylor, we cannot find that the duly cautioned jury clearly lost its way. Thompkins,supra. Their testimony elicited that Appellant was directly involved in the robbery in which Husam Halaweh was murdered and that Appellant had control of a firearm. Furthermore, this testimony could lead a properly charged jury to conclude that Appellant committed the crimes beyond a reasonable doubt.
We find Appellant's second assignment of error also to be without merit and affirm the judgment of the trial court.
Donofrio, J., concurs.
Vukovich, J., concurs.
APPROVED:
CHERYL WAITE, JUDGE