OPINION
Jeremiah Young appeals from his conviction in the Montgomery County Common Pleas Court of one count of forcible rape, seven counts of forcible rape of a child under 13, and two counts of felonious sexual penetration.
The victim of the crimes was Young's step-daughter Ebony Cooper. The sexual abuse occurred over a ten year period from the time Ebony was six years old until she was sixteen years old. Ebony testified she never told her mother Diane Cooper or anyone else about the sexual abuse because Young threatened to kill her if she told anyone.
During the summer of 1995, Ebony told her friend Reshia of the rapes. Reshia's grandmother, Yolanda Ray, was on the phone and heard the conversation. The next day Ebony talked to Ms. Ray of the sexual abuse. Ray encouraged Ebony to tell her mother, and she offered to let them hide at her house from Young. However, Ray told no one. The following school year, Ebony told three other friends of the sexual abuse, but the police were not called at that time.
Diane Cooper moved with her three children to Chillicothe, Ohio on October 12, 1998, and the sexual abuse finally ended. On December 19, 1998, Ebony finally told her mother of the sexual abuse that Young had inflicted upon her. Diane was visibly upset by the news. Ebony did not want to involve the police, so they were not called at that time.
On June 30, 1999 Diane died in a car accident. Ross County Children's Services was searching for a guardian for the children. Id. Ebony revealed Young's sexual abuse of her to someone in that office, and she was then interviewed by Ross County Sheriff's Deputy, Detective Laura Butt. Id. During an hour long interview, Ebony told Butt of much of the sexual abuse she had suffered at Young's hands over the past ten years.
Ebony testified in detail about the many instances of sexual abuse. She described an incident when she was fourteen or fifteen when she said Young made her perform sex on him which was witnessed by her brother, Toni Young. Ebony testified she was sitting on the green chair in the living room, and the defendant was standing in front of her with his pants around his knees. Ebony testified her brother started to come down the stairs, but when he saw what was going on, he ran back to his bedroom. When Ebony saw Toni, she stopped and Young asked her why, and she told him. Ebony testified Young called Toni down and asked him what he thought that he had seen and when Toni told him, Young made Toni apologize to him and to Ebony for thinking such a thing. Young also threatened to beat Toni and sent Ebony upstairs for his belt.
Toni Young corroborated his sister's testimony concerning the fellatio incident. Young testified he was fourteen years old at the time of trial and he had been living in Chillicothe since October 1998. Young testified that in the spring of 1997 he witnessed his sister, Ebony, giving the defendant a "blow job." (Tr. 206). Young testified his father realized he had seen the sexual act and so he confronted Toni and told him he didn't see what he thought he saw and to apologize to his sister Ebony, and him. Young said his father looked angry and told Ebony to get his belt. Young said the defendant did not use the belt on him or his sister at that time. Young said the defendant often used his belt to discipline Ebony and him.
In his first assignment, Young argues that he was denied the effective assistance of counsel by his counsel's failure to exclude a prospective juror during the voir dire.
Specifically, Young contends his counsel should have had a Mr. Schneider removed from service as a juror. During voir dire, the court asked the prospective jurors if they or "any member of their family, close friends or relatives had ever been a complaining witness in a criminal case or a victim of a crime." (Tr. 28). In response, a juror identified as Mr. John Schneider informed the court that his daughter was raped. (Tr. 29). The court then asked Mr. Schneider specifically if there was anything about that case that "would affect [his] ability to be a fair and impartial juror in this case. Id. In response, Mr. Schneider stated "No, sir." Id. As expected, the court then moved on to another question to the jurors in general. Id.
Later, during voir dire, defense counsel returned to Mr. Schneider. (Tr. 85-86). After a short exchange, defense counsel asked Mr. Schneider if anyone was apprehended in his daughter's case. (Tr. 86). In turn, Mr. Schneider responded that someone had been apprehended but "nothing good came of it." Id. Defense counsel did not challenge Schneider "for cause" nor did he exercise a peremptory challenge to remove him. Defense counsel did exercise three peremptory challenges on other jurors and had an additional challenge left unexercised.
Young argues that a reasonably competent attorney would have requested that Mr. Schneider be removed because his daughter was a victim of the same crime as the defendant and because he appeared to have a negative attitude about the legal process.
The State contends the assignment must be overruled because the record fails to portray that Mr. Schneider served as a juror at the defendant's trial. The transcript refers to John Schneider. He was not removed for cause or peremptorily. A "Daniel Snyder" signed the verdict forms and responded to the polling of the jurors. (Tr. 266). The State argues that assuming Mr. "Schneider" served on the jury and counsel was ineffective for not removing him, there is no reasonable probability that, were it not for counsel's error, the result of the trial would have been different. Citing, State v. Bradley (1989), 42 Ohio St.3d 136.
Although the record is confusing, it seems likely that the person identified in the record by the court reporter as John Schneider is the Daniel T. Snyder who served as juror and signed the verdict forms. The person identified in the voir dire as "John Schneider" was not removed as a juror at any time.
We agree, however, with the State that this assignment must be overruled. Assuming that defense counsel was constitutionally ineffective for not exercising a peremptory challenge to remove Schneider (or Snyder), there is no reasonable probability that the jury's verdicts would have been different. There is no "probability sufficient to undermine our confidence in this trial's outcome." See, State v.Bradley, supra. The assignment is overruled.
In his second assignment, Young contends the trial court erred in permitting the prosecutor to ask several leading questions of Ebony Cooper during her direct examination. Young contends the prosecutor repeatedly phrased his leading questions so that they included the time spans in which the alleged events occurred for each count in the indictment. Counsel refers us to the pages in the record that support his contention. The following are relevant excerpts from the record:
 Q. Do you recall some point in time after your sixth birthday the approximate date of April 29 or April 1st of 1988 and June 30 of 1988, between that, that this defendant, Jeremiah Young, ever touched you in any of your private areas for the first time?
MR. GABEL: Objection. Leading.
THE COURT: Overruled. You may answer.
THE WITNESS: Yes.
(Tr. 128).
 Q. Ebony, did there next come a point in time between the period of March 1 of 1993, and April 30 of 1993, that this defendant, Jeremiah Young, sexually abused you in the bathtub of your apartment?
MR. GABEL: Objection. Leading.
THE COURT: Overruled.
THE WITNESS: Yes.
THE COURT: You may answer.
THE WITNESS: Yes.
(Tr. 135).
 Q. Now, I want to move forward and ask you this, Ebony. Did there next come a point in time between April 1 of 1993, and April 30 of 1993, that the defendant, Jeremiah Young, first introduced you to the sexual aid that is a vibrator or dildo.
A. Yes.
MR. GABEL: Objection.
THE COURT: Overruled. The answer will stand.
(Tr. 138).
 Q. Ebony, I'd like to direct your attention to the next incident, sometime during this time period of July 1 of 1993 to December 30, 1993. I believe you are still 11 years old, is that correct?
A. Yes.
 MR. GABEL: Your Honor, I am sorry to interrupt. I object to the leading.
 THE COURT: If you can refrain from leading, it would be appreciated. You may continue.
MR. POHLMAN: I will try to do so, Your Honor.
(Tr. 153,154).
 Q. Ebony, I'd like to move on to the next count. Ebony, I'd like to direct your attention to the time period of March 1 through April 28 of 1995, just before, I believe, your 13th birthday. Do you recall that time period?
MR. GABEL: Sorry to interrupt. Leading.
 THE COURT: I think it is orienting the witness by point in time. Overruled.
MR. POHLMAN: Thank you, Your Honor.
THE WITNESS: Yes.
 (Tr. 156)., Appellant argues that the prosecutor was not using leading questions on his direct examination as a necessary means of developing the complaining witness' testimony, but was testifying as to material matters for the witness.
The appellant argues the leading questions were improper because the complaining witness was not of tender years, was not close in affinity to the accused, and was not nervous nor slow in responding to questioning. The appellant argues there was no logical reason for the court to permit the prosecutor's improper questioning, and the court's rulings were prejudicial to him.
Evid. R. 611(C) provides that leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. The use of leading question for this purpose and the limits upon its use is committed to the sound discretion of the trial court. State v. Lewis (1982), 4 Ohio App.3d 275, 278.
The leading questions to which defense counsel objected were those questions directing the witnesses' attention to an area of inquiry, incidents directly related to the specific counts in the indictment. This type of leading question is proper. See, State v. D'Ambrosia (1993),67 Ohio St.3d 185, 190, citing 3 Wigmore on Evidence Chadbourn Rev. 1970, 154, Section 769. The appellant has failed to demonstrate that the court's rulings reflect an abuse of discretion. The second assignment is likewise overruled.
In his third and final assignment, Young argues the prosecutor engaged in misconduct when he made the statement in the final argument that the ten counts in the indictment were the "tip of the iceberg" and by misstating the testimony of the complaining witness that the defendant told her "I am not going to stop until I break you in good."
Appellant argues that the "iceberg" statement suggested that the defendant engaged in criminal conduct not included in the ten count indictment, and the misstatement of the victim's testimony also prejudiced him in the minds of the jury.
The State argues that the "iceberg" statement was a fair comment on the evidence as it was clear from the victim's testimony that the defendant had been abusing her over many years since she was a very young child. The State argues that the defendant was charged only with those offenses for which the victim could remember with some specificity. For instance, the State argues that the victim told the jury without objection that Young committed felonious sexual penetration on many occasions by use of a vibrator and dildo.
The State argues that Young did not preserve the error asserted as to the prosecutor's characterization of the victim's testimony because no objection was interposed by defense counsel, and the statement was clearly not "plain error."
Even if Young had preserved this issue for appeal, the State argues Young mischaracterizes the prosecutor's statement. The prosecutor stated as follows: "He wanted to open her up. And he put his finger inside her. You recall the testimony. He got up and left. You know, saying, I am not going to stop until I break you in good. That was his attitude." (Tr. 226). Thus, the prosecutor never said that Young told Ebony that he was not going to stop until he broke her in good. Instead, the prosecutor stated that Young implied this threat by his actions combined with his statement that he was going to open her up.
We agree with the appellant that a prosecutor should always confine his final remarks to the facts which will support the charges in the indictment. In this case, however, the court permitted the victim to testify to the on-going sexual abuse which she received from the appellant over a long period of time. We believe the prosecutor's remark taken in the context of the evidence was not prejudicial error and did not deny the appellant a fair trial. State v. Landrum (1990),53 Ohio St.3d 107, 112.
Prosecutors are also entitled to some latitude in arguing what inferences the jury may draw from the evidence presented. The prosecutor in this case only argued that the defendant's conduct displayed a certain "attitude" toward his victim which attitude the jury might have fairly inferred from the evidence presented. In any event a contemporaneous objection was not made to the remarks by defense counsel. There is certainly no "plain error" resulting from the prosecutor's remarks. Statev. Bey (1999), 85 Ohio St.3d 487, 495. The final assignment is overruled. The judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J., concur.