**[Cite as *State v. Shoffner*, 2020-Ohio-4239.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28540 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1644 |
| | : | |
| KENDALL SHOFFNER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of August, 2020.

. . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 West Monument Avenue, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Kendall Shoffner appeals from his conviction for gross sexual imposition and soliciting a minor. Shoffner contends the trial court erred by failing to conduct a hearing in response to his claim that the State improperly used a peremptory challenge to remove an African-American from the jury. He further asserts the trial court erred by permitting the State to ask leading questions of the victim. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On May 23, 2019, Shoffner was indicted on one count of gross sexual imposition in violation of R.C. 2907.05(A)(1) and one count of soliciting a minor in violation of R.C. 2907.24(A)(2). A jury trial was conducted in September 2019. At trial, the evidence established that Shoffner attended a party where 16-year-old M.A. was present. The evidence showed that, during the course of the party, Shoffner gave M.A. money in an attempt to induce her to have sex with him. When M.A. refused, Shoffner grabbed her hand and placed it on his erect penis. The jury found Shoffner guilty as charged, and the trial court sentenced him to 12 months in prison on each count, to be served concurrently. The court also classified Shoffner as a Tier I sex offender. Shoffner appeals.

## II. *Batson* Challenge

{¶ 3} Shoffner asserts the following as his first assignment of error:

THE TRIAL COURT ERRED IN OVERRULING MR. SHOFFNER'S OBJECTION TO A PEREMPTORY CHALLENGE OF A PROPOSPECTIVE

[SIC] JUROR ON THE BASIS OF RACIAL DISCRIMINATION.

{¶ 4} Shoffner contends the trial court erred in failing to conduct a hearing after the State improperly utilized a peremptory challenge to excuse the only African-American male on the jury panel.

{¶ 5} In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the use of peremptory challenges to excuse a juror solely because of that juror's race. *Batson* established a three-step analysis for trial courts to decide claims of race-based challenges to jurors. *State v. Manns*, 106 Ohio App.3d 687, 2006-Ohio-5802, 864 N.E.2d 657, ¶ 30 (2d Dist.), citing *Batson*. First, a defendant must make a prima facie case that the challenge is racially motivated. *Id.* at ¶ 31. Next, if the defendant satisfies this burden, the prosecutor must provide a racially-neutral explanation for the challenge. *Id.* at ¶ 32. Finally, the court must decide, based on all the circumstances, whether the defendant has proved purposeful racial discrimination. *Id.* at ¶ 33. In making its decision, the trial court "must consider the circumstances of the challenge and assess the plausibility of the prosecutor's explanation in order to determine whether it is merely pretextual." (Citations omitted.) *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 21. "Review of a *Batson* claim largely hinges on issues of credibility. Accordingly, we ordinarily defer to the findings of the trial court. * * * Whether a party intended to racially discriminate in challenging potential jurors is a question of fact, and in the absence of clear error, we will not reverse the trial court's determination." (Citations omitted.) *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 102, 676 N.E.2d 872 (1997).

**{¶ 6}** In this case, the State exercised a peremptory challenge against prospective juror A.B. The defense then stated, "We'd object from a racial standpoint, he's the only African American male."[1] Tr. p. 114. The State then pointed to A.B.'s statement that he had previously been arrested for drug possession and would "probably" have "difficulty" if a police officer testified. The State also noted A.B.'s statements that, on a couple of occasions, he believed he had been treated unfairly by the police, and that these encounters would cause him to have some bias against the police. Finally, the State noted A.B. claimed that, due to his religious beliefs, he would rather not judge anyone. Without any further inquiry as to whether the defense challenged the stated reasons, the court overruled the defense objection to the use of the peremptory challenge.

**{¶ 7}** While the trial court's handling of this matter was arguably less than ideal, we disagree with Shoffner's claim that the trial court did not conduct any hearing on his objection to the State's exercise of the peremptory challenge. After the objection was made, the court inquired as to the State's reasons for the peremptory strike, and the defense made no attempt to refute the State's race-neutral bases for the dismissal.

**{¶ 8}** "Courts have previously recognized that the potential bias that may result from a prospective juror's or his or her family's experiences with the criminal justice system may be a legitimate, racially neutral reason for exercising a peremptory strike against the prospective juror." (Citations omitted.) *State v. May,* 2015-Ohio-4275, 49 N.E.3d 736, ¶ 51 (8th Dist.). Here, the juror indicated that he had had several encounters

---

[1] Based upon this record, it is not clear whether this was sufficient to raise a *Batson* challenge as it can be inferred from defense counsel's statement that there were also African-American women on the jury panel who were not challenged. Nonetheless, the State went on to present its basis for the challenge.

with law enforcement which caused him to be biased against the police. He further stated that his religious beliefs made it difficult for him to pass judgment on other individuals. A peremptory challenge based upon such reluctance is race-neutral.

{¶ 9} The trial court was in the best position to weigh the credibility of the State's explanations in determining whether the State exercised its peremptory challenges with a discriminatory intent. Following a thorough review of the record, we cannot say that the trial court's decision to allow the State to exercise this peremptory challenge was clearly erroneous. Accordingly, Shoffner's first assignment of error is overruled.

### III.    Leading Questions

{¶ 10} Shoffner's second assignment of error states as follows:

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO ASK LEADING QUESTIONS ON DIRECT EXAMINATION.

{¶ 11} Shoffner asserts the trial court improperly permitted the prosecutor to ask leading questions of M.A. during her direct examination. Specifically, Shoffner objected to the following portion of the State's direct examination of the victim:

Q: Did [Shoffner] make any comment about you guys' relationship?

A: No. He said one thing he said, I'm not your real uncle. That's all he said.

Q: Okay. Did he ever talk to you about doing any sexual acts?

Tr. p. 175-176.

{¶ 12} Evid.R. 611(C) states "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony."

"The exception 'except as may be necessary to develop [the witness'] testimony' is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court."   *State v. Lewis*, 4 Ohio App.3d 275, 278, 448 N.E.2d 487 (3d Dist.1982).

{¶ 13} Just prior to the cited passage, the prosecutor asked M.A., "what happened?"   M.A. testified that, during the party, she went into the kitchen to charge her phone; Shoffner, who she knew as her "uncle," followed her and began to make comments to her about "trying to bribe [her] to sleep with him * * *."   Tr. p. 174.   She also indicated he started to "touch on my back, my lower back, just rubbing on me and kept whispering in my ear telling me how cute I am, how he want me [sic] so bad."   *Id.*   She had already testified that she referred to Shoffner as her "uncle," but she did not know whether they were actually related.

{¶ 14} Clearly, the questions to which Shoffner objects were merely follow-up questions regarding information already provided by M.A.   In other words, regardless of whether the questions were leading, the testimony elicited thereby had already been introduced.   Thus, we cannot conclude the prosecutor improperly influenced the victim's responses, and any error in allowing the questions was harmless.

{¶ 15} The second assignment of error is overruled.

## IV.    Conclusion

{¶ 16} Both of Shoffner's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Sean Brinkman
Hon. Timothy N. O'Connell